A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

RECEIVED
SEP 30 2025
U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

Derrick Woodberry — Plaintiff

355771 — Inmate Number

VERSUS

Walter Farrell, et al Seth Smith, Gary Westcott, Luke Rheams, Jason Russ, Jason Linzy, Joe Buttross, Tim Hooper, Brandy Landry, Craig White, Chad Darbonne, Warren Dugas, Kimberly Williams, Denyshia Williams, Keithe Turner, Stephen Coody, Willie Vessel, Stephanie Gaines, Donnie Bordelon, Darrel Vannoy, Edward Bickham, Shannon Demars, Kolby Johnson, State of Louisiana, through Louisiana Dept. of Corrections

(Enter above the full name of each defendant in this action.)

Electronic Filing Pilot Program

In accordance with the Procedural Rules for Electronic Filing Pilot Project, General Order 2012-01, inmates who reside in or are transferred into Louisiana Department of Corrections facilities participating in the Electronic Filing Pilot Program shall receive orders, notices and judgments by Notice of Electronic Filing ("NEF").

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. § 1983.

The names of **all parties** must be listed in the caption and in part III of the complaint **exactly the same.**

In order for this complaint to be filed, it must be accompanied by the filing fee of $402.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pre-pay the filing fee and service costs, you may petition the court to proceed in forma pauperis. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, DO NOT INCLUDE EXHIBITS.

Submit the complaint and pauper affidavit to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I. Previous Lawsuits

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? Yes (✓) No ( )

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit
   Plaintiff(s): Derrick Woodberry

   Defendant(s): Jason Russ, Donald Johnson, Jason Linzy, Brandy Landry

2. Court (if federal court, name the district; if state court, name the parish):
   US-MD LA Baton Rouge Parish

3. Docket number: 22-00979-BAJ-RLB

4. Name of judge to whom case was assigned: Hon. Brian Jackson

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):

6. Date of filing lawsuit: December 1, 2022
7. Date of disposition: Still pending

C. Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?
   Yes ( ) No (✓)

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.
N/A

II. Place of present confinement: Louisiana State Penitentiary

A. Is there a prisoner grievance procedure in this institution?
Yes (✓) No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes (✓) No ( )

C. If your answer is Yes:

1. Identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed. EHCC-2024-180, EHCC-2024-810 EHCC-2025-150, LSP-2025-1076

2. What steps did you take?

3. What was the result? Denied, EHCC-2024-180 granted AS A D.D. Appeal

D. If your answer is No, explain why not:

III. Parties
(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff(s) Derrick Woodberry #355771
Address Louisiana State Penitentiary

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

B. Defendant Walter Farrell is employed as Assistant Warden at Elayn Hunt Correctional Center

C. Additional Defendants: Seth Smith, Gary Westcott, Jason Russ, Jason Linzy, Brandy Landry, Tim Hooper, Chad Darbonne, Warren Dugas, Joe Buttross, Kimberly Williams, Denyshia Williams, Stephen Coddy, Keithe Turner, Craig White, Luke Rheams, Stephanie Gaines, Willie Verret, Edward Bickham, Donnie Bordelon, Darrel Vannoy, Shannon Demars, Kolby Johnson, State of Louisiana, through Department of Corrections

IV. Statement of Claim

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. **Do not given any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

SEE Attached Complaint with several enumerated Federal and State Law Claims (34) pages are attached

V. Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. Attach no exhibits. SEE Attached (34) pages which set forth the relief desired.

VI. Plaintiff's Declaration

1. I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

2. I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any costs assessed by the Court, which, after payment of the partial initial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3. I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

4. I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this 26th day of September, 2025.

Derick Woodberry

Signature of plaintiff(s)

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

**DERRICK WOODBERRY**
**Plaintiff**

**Case No. ___________**

**v.**

**JUDGE_______________**

**Walter Jarrell, Seth Smith, Gary Westcott, Jason Russ, Jason Linzy, Joe Buttross, Brandy Landry, Tim Hooper, Chad Darbonne, Warren Dugas, Kimberly Williams, Stephen Coody, Denyshia Williams, Keithe Turner, Luke Rheams, Craig White, Willie Verrett, Edward Bickham, Stephanie Gaines, Donnie Bordelon, Darrel Vannoy, (FNU) Braun, Shannon Demars, (FNU) Kleinpeter, Kolby Johnson, in their official and individual capacities, STATE OF LOUISIANA, through Louisiana Department of Public Safety and Corrections**
**Defendants**

**MAGISTRATE JUDGE ___**

**COMPLAINT 42 U.S.C. § 1983**

This case presents a trifecta, if not more of federal civil rights violations: systematic individual retaliation under 42 U.S.C. § 1983, institutional liability under Monnell v. Dept. Social Services, and criminal conspiracy under 18 U.S.C. § 241, 242, and 42 U.S.C. § 12102 and 29 U.S.C. § 705(9). The defendants' own admissions create an extraordinary evidentiary record demonstrating how individual misconduct evolved into institutional policy, culminating into a facility-wide discriminatory rule/practice literally named after the plaintiff.

## Case Overview

1. Plaintiff Derrick Woodberry #355771, filed a pro se federal lawsuit in December 2022, against multiple prison officials at Elayn Hunt Correctional Center (EHCC) in Iberville Parish for retaliation and cruel and unusual punishment.
2. This case documents a systematic campaign of retaliation that dramatically escalated after each legal filing, establishing grounds for individual liability, municipal liability under Monnell, federal criminal conspiracy under 18 U.S.C. § 241, 242, civil conspiracy claims,42 U.S.C. § 12102 and 29 U.S.C. § 705(9), and multiple state law violations.
3. Plaintiff Woodberry is incarcerated in the custody of the Louisiana Department of Public Safety and Corrections ("DPS&C). He has lived primarily the majority of the last 6 years at Elayn Hunt Correctional Center. Plaintiff is serving a Life with Parole sentence as a juvenile non-homicidal offender and has been incarcerated over 31 years to date.
4. Plaintiff is a person with a disability as defined in 42 U.S.C. § 12102 and 29 U.S.C. § 705(9). He is a level of care 5h and qualifies as a disabled person under ADA and Rehabilitative Act 504.
5. Plaintiff Woodberry will plead facts pursuant to Rule 8(a)(2) Federal Rule of Civil Procedure but will willfully allege a detailed 'chronology of events' of factual allegations in subsequent paragraph(s). Plaintiff maintains all facts alleged in this complaint as a part of motivation for the retaliatory act of the defendants but are also a part of his additional claims.
6. Over the course of his incarceration the plaintiff worked hard at self help improvement and built a decent, productive life at Elayn Hunt Correctional Center. Woodberry was an active participant in the hobby craft program, enrolled in the HVAC-R vocational studies and transitional programs, an active member in the Rastafarian Community, and housed in the Fox 6 VETS mentorship program, training to become a mentor. Mr. Woodberry had not received a real

disciplinary report since 2023 except for a false report issued by the defendants to which he was exonerated in appeal.

7. In September 2019, plaintiff was attacked by another inmate wearing a homemade mask while Woodberry slept. As a result, Woodberry was immediately transferred to Elayn Hunt Correctional Center. His attacker was Kendall Davis.
8. In July 25, 2022, Woodberry was again transferred to David Wade Correctional Center, near Kendall Davis and several known documented enemies.
9. In late 2022, U.S Western District Judge Elizabeth Foote signed a sealed order numbers **22-cv-5600-EFF-MLH,** relative to Woodberry's safety and resulted in his transfer back to Elayn Hunt Correctional Center.
10. In December 2022, Woodberry filed a federal lawsuit **22-cv-00979-BAJ-RLB** against Jarrell, Johnson, Russ, Landry, and Linzy. This protected First Amendment activity triggered all subsequent retaliation.
11. The evolution from individual retaliation to institutional conspiracy. Early warning signs-February to March 2024
12. On February 5, 2024 Jarrell, Buttross, Gaines, Polozoa, Seth Smith, were dismissed by this federal court as defendants in the aforementioned civil action. A critical procedural error later proved significant.
13. Plaintiff began to communicate with WBRZ news reporter Bess Casserleigh in 2024.
14. In retaliation for communicating with the press, filing lawsuits and grievances Mr. Woodberry was ultimately transferred to LSP ANGOLA into grave and imminent danger after he endured a campaign of harassment at (EHCC) Hunt which lasted several months.
15. Mr. Woodberry was placed in direct, imminent danger, subjected to torturous conditions, endured false reports and 73 days of solitary confinement, all of his personal belongings, and religious materials, denied participation in Rastafarian Study, personal effects seized, or lost. Including but not limited to his hobby craft tools.

16. Mr. Woodberry arrived at LSP ANGOLA and discovered his protection enemy concern records had been deleted or altered to remove several known documented enemies placing him in direct imminent danger. ***It should be noted the Summary Report report provided by Seth Smith on March 26, 2025, in response to the email complaint of his family clearly stated Woodberry had 63 documented enemies 5 at HUNT, 4 four of which were removed. This proves that the list was altered prior to his transfer to LSP.*** Upon information and belief this was intentionally done by defendants Jarrell, Verret, Gaines, Buttross, Russ, Landry, Turner, Seth Smith, Coody and Darbonne to expedite and facilitate the retaliatory transfer.

17. He was placed in a cell with no mattress, or toilet paper for two days. Woodberry was classified as solitary confinement due to this transfer which ALL defendants knew or should have known grave safety/enemy concerns existed at LSP ANGOLA.

18. Mr. Woodberry was subjected to the most severe and punitive treatment accorded by the Department to its prisoners. His offense was filing lawsuits, grievances and communication to the outside world about the dynastic culture of greed and corruption permeating the second largest State Departments.

19. The retaliatory conduct by the defendants has been personally devastating to Mr. Woodberry. It is also unconstitutional and gives rise to the instant action.

**JURISDICTION**

20. This cause of action arises under the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, 18 U.S.C. § § 241, 242, 18 U.S.C. §§ 1503,1512, as well as RLUIPA and 42 U.S.C. § 12131 et seq., and 29 U.S.C. § 794. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § § 1331, 1343(a)(3) and 2201.

21. This court has supplemental jurisdiction of the Louisiana State law claims pursuant to 28 U.S.C. § 1367.

22. This court is authorized to grant declaratory relief under 28 U.S.C. § § 2201, 2202.

23. At all relevant times,all defendants acted under color of state law, and within the scope of their employment. Their actions constituted a continuing violation of Plaintiff's federally protected rights.

## VENUE

24. This Venue is proper under 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claims occurred" in this district.

## PARTIES

25. Plaintiff Derrick Woodberry is a person incarcerated in the Louisiana DPSC. He is presently housed at Louisiana State Penitentiary in Angola, Louisiana. The Defendants retaliated against Mr. Woodberry in response to the exercise of his First Amendment rights, denying him due process of law, as more fully articulated, infra. Created and enforced a discriminatory exclusionary rule against Plaintiff, conspired criminally and civilly to violate Woodberry's rights

26. Defendant Walter Jarrell, is an Assistant Warden at Elayn Hunt Correctional Center. He is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections acting both of his own volition and under direction and supervision of defendants Westcott, Smith, Hooper, Darbonne, Russ, Turner, Rheams, & Bickham. He created, oversaw and enforced the Woodberry exclusionary rule, and he threatened retaliatory transfer to LSP Angola, he ordered and oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims, he ordered the false report of Brandy Landry. He threatened, and enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition programs but transferred plaintiff or allowed the transfer knowing he received the funding. He is believed to be the mastermind of the conspiracy to have Woodberry violently attacked at Angola.He is sued in his official capacity for injunctive relief and in his individual

capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

27. Seth Smith is a defendant and is a current employee of the Department of Public Safety and Corrections, believed to be the Chief of Operations, acting under the direct and supervision of defendant Westcott. He was aware and acknowledged the existence, created, oversaw and enforced the Woodberry exclusionary rule, It is clearly stated in his Summary Report. He enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ, and furtherance of the Woodberry rule. Defendant Smith physically ordered the transfer of Plaintiff Woodberry from EHCC to LSP ANGOLA, and ordered that Woodberry remain housed at Angola despite his safety concerns at LSP and lack of disciplinary reports. It should be noted the Summary Report report provided by Seth Smith on March 26, 2025, in response to the email complaint of his family clearly stated Woodberry had 63 documented enemies 5 at HUNT 4 four of which were removed. This proves that the list was altered prior to his transfer to LSP. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition programs but transferred plaintiff or allowed the transfer knowing he received the funding. Smith has modified salient DPSC policies since Plaintiff Woodberry's transfer. He has the authority to not impose or maintain the retaliatory discipline and transfer, Monnell violations and prevent all of the retaliatory acts expressed herein but he chose to allow, impose, and maintain it. Defendant Smith is involved in the unlawful retaliation complained of herein both personally and a final decision maker for the DPSC. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

28. Defendant Gary Westcott is the appointed Secretary of the Department of Public Safety and Corrections for the State of Louisiana. He has overall responsibility for the policies, procedures,

operations, and supervision of the DPSC, its employees, agents, assigns, and correctional facilities, including the Louisiana State Penitentiary at Angola and Elayn Hunt Correctional Center. Secretary Westcott is the final policymaker and decision maker for the DPSC. He enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transitional programs but transferred plaintiff or allowed the transfer knowing he received the funding. He oversaw and enforced the Woodberry exclusionary rule, He is ultimately responsible for establishing DPSC policies pertaining to freedom of speech, the ability of prisoners to communicate with members of the media, retaliation against prisoners for speech and due process afforded to prisoners, inter alia. He also denied Plaintiff equal protection of the law in maintaining the custody of Plaintiff at LSP despite his verified safety concerns, compared to inmates with less severe safety concerns who he personally transferred from LSP for the same reason. He had the authority to not impose or maintain the retaliatory discipline and Monnell violations, as well as the retaliatory transfer against Mr. Woodberry but he chose to impose and maintain it. He was clearly made aware of all the instances and agreed with his Staff's decisions in writing. Thus, Defendant Westcott is an active participant in the acts complained of herein, both via personal involvement and in his capacity as policymaker. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

29. Defendant Jason Russ is the current Warden of Security at the Elayn Hunt Correctional Center at St. Gabriel, Louisiana. He is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections acting both of his own volition and under direction and supervision of defendants Westcott, Smith, Hooper, Darbonne, Turner, Rheams, & Bickham. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition programs but transferred plaintiff or allowed the transfer

knowing he received the funding. He oversaw and enforced the Woodberry exclusionary rule, He was personally involved and imposed or maintained the retaliatory discipline, transfer and Monnell violations. He threatened, and enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ, and the scheduled federal depositions. He had the authority to not impose or maintain such but he chose to impose and maintain it. He is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

30. Defendant Jason Linzy is a Major in security at the Elayn Hunt Correctional Center at St. Gabriel, Louisiana. He is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections acting both of his own volition and under direction and supervision of defendants Westcott, Smith, Hooper, Darbonne, Russ, Turner, Rheams, & Bickham, Jarrell, Landry, and White. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

31. Defendant Joe Buttross is currently an Assistant Warden at Elayn Hunt Correctional Center at St. Gabriel, Louisiana. He is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections acting both of his own volition and under direction and supervision of defendants Westcott, Smith, Hooper, Darbonne, Russ, Turner, Rheams, & Bickham. He is the head of Classification of inmates, responsible for housing, job assignments, and transfers of inmates, as well as maintaining enemy records. He threatened, and enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition programs but transferred plaintiff or allowed the transfer knowing he received the funding. He oversaw and enforced the Woodberry exclusionary rule.

He is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

32. Defendant Brandy Landry is currently a Colonel and lead investigator for Elayn Hunt Correctional Center at St. Gabriel, Louisiana. She took retaliatory actions in falsifying reports, ordering shakedowns, offered quid pro quo to drop lawsuit and video request and furthered the enforcement of the Woodberry exclusionary rule. She threatened, and enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. She was very instrumental in the retaliatory transfer. She is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. She is sued in his official capacity for injunctive relief and in his individual capacity for damages. She is a resident of the full age of majority of the Middle District of Louisiana.

33. Defendant Tim Hooper is the former head Warden of Elayn Hunt Correctional Center. He is now retired. He created, oversaw and enforced the Woodberry exclusionary rule, and he threatened retaliatory transfer to LSP Angola, he ordered and oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims, he ordered the false and compromised Summary Report to shut Headquarters up. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition program but denied access to plaintiff or allowed the transfer knowing he received the funding. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

34. Defendant Chad Darbonne is the former Deputy Warden of Operations at Elayn Hunt Correctional Center. He is currently an Assistant Warden at the Louisiana State Penitentiary at Angola. He created, oversaw and enforced the Woodberry exclusionary rule, and he threatened retaliatory transfer to LSP Angola, he ordered and

oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims, he ordered the false and compromised Summary Report to shut Headquarters up. He threatened, and enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition program but transferred plaintiff or allowed the transfer knowing he received the funding. He is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

35. Defendant Warren Dugas is a Colonel at Elayn Hunt Correctional Center. He assisted, oversaw and enforced the Woodberry exclusionary rule, and he threatened retaliatory transfer to LSP Angola, he ordered and oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims. He placed Woodberry in the torturous conditions in the feces/chemical agent cell. Forced him to stand in 14° weather to drop an ARP. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

36. Defendant Kimberly Williams is a Major at Elayn Hunt Correctional Center. She is employed as an assistant investigator at EHCC. She oversaw and enforced the Woodberry exclusionary rule, and she ordered and oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims, she authored the false and compromised Summary Report to shut Headquarters up and cover up the violations of Plaintiff's civil rights. She threatened, and enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. She is sued in his official capacity for injunctive relief and in his individual capacity for damages. She is a resident of the full age of majority of the Middle District of Louisiana.

37. Defendant Stephen Coody is an assistant Warden at Elayn Hunt Correctional Center who is a Unit Manager. He oversaw and enforced the Woodberry exclusionary rule, and he threatened retaliatory transfer to LSP Angola, he ordered and oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition program but transferred plaintiff or allowed the transfer knowing he received the funding.He is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

38. Defendant Denyshia Williams is a Master Sergeant at Elayn Hunt Correctional Center. She is the ARP screening officer and is responsible for processing and management of all Administrative Remedy Procedure Complaints. She ordered and assisted in the retaliatory actions due to Woodberry filing complaints and Lost Property Claims; she refused to enforce the established deadlines for processing and response to complaints. As well as refusing to accept certain ARPS Plaintiff filed against select employees like Brandy Landry and delayed other complaints. She is sued in his official capacity for injunctive relief and in his individual capacity for damages. She is a resident of the full age of majority of the Middle District of Louisiana.

39. Keithe Turner is the current Head Warden of Elayn Hunt Correctional Center. He is a final policy and decision maker. He threatened, and enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. He enforced the Woodberry exclusionary rule, he oversaw and enforced retaliatory actions due to Woodberry filing complaints and Lost Property Claims.He is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition program but transferred plaintiff or allowed the transfer knowing he received the

funding. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

40. Luke Rheams is the current Deputy Warden of Elayn Hunt Correctional Center, he also served as the acting Deputy Warden at salient times of the violations against Plaintiff. He is a final policy and decision maker. He threatened, and enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. He enforced the Woodberry exclusionary rule, he oversaw and enforced retaliatory actions due to Woodberry filing complaints and Lost Property Claims.He is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition program but transferred plaintiff or allowed the transfer knowing he received the funding. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

41. Defendant Willie Verrett is the rank of Major at Elayn Hunt Correctional Center. He is responsible for disciplinary board actions and housing assignments of inmates upon release for segregation and or reclassification. He enforced the Woodberry exclusionary rule, he oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

42. Defendant Edward Bickham is the current Head Warden of Dixon Correctional Institute and the Regional Warden of Elayn Hunt Correctional Center. At all times salient, Bickham was the interim/acting Warden of Hunt. He enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition program but transferred plaintiff or allowed the transfer knowing he received the funding. He is sued in his official capacity for injunctive

relief and his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

43. Defendant Stephanie Gaines is a Major Elayn Hunt Correctional Center. She is responsible for disciplinary board actions and housing assignments of inmates upon release for segregation and or reclassification. She enforced the finding of guilt on the false report her supervisor Brandy Landry and Defendant Kleinpeter, enforced the Woodberry exclusionary rule, she oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims. She is sued in his official capacity for injunctive relief and in his individual capacity for damages. She is a resident of the full age of majority of the Middle District of Louisiana.

44. Defendant Donnie Bordelon is currently an assistant Warden at Louisiana State Penitentiary Angola. At all salient times expressed herein Bordelon was the head Warden of Elayn Hunt Correctional Center. He oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims. He is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. He is motivated due to Woodberry's contribution to his demotion from Head Warden at EHCC to Assistant Warden at LSP ANGOLA. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

45. Defendant Darrel Vannoy is the head Warden of Louisiana State Penitentiary-Angola. He enforced the Woodberry exclusionary rule, he oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims. He enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ.He also denied Plaintiff equal protection of the law in maintaining the custody of Plaintiff at LSP despite his verified safety concerns, compared to inmates with less severe safety concerns who he personally transferred from LSP for the same reason. He is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. He is sued in his official capacity for

injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

46. Defendant (FNU) Braun is a captain at the Louisiana Department of Public Safety and Corrections, currently assigned at Elayn Hunt Correctional Center. He oversaw and enforced the Woodberry exclusionary rule, and he oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims, he authored the false and compromised Summary Report to shut Headquarters up and cover up the violations of Plaintiff's civil rights. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

47. Defendant Shannon Demars is the current Assistant Warden of Security for the Louisiana State Penitentiary-Angola. He enforced the Woodberry exclusionary rule, he oversaw retaliatory actions due to Woodberry filing complaints and Lost Property Claims. He enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. He also denied Plaintiff equal protection of the law in maintaining the custody of Plaintiff at LSP despite his verified safety concerns, compared to inmates with less severe safety concerns who he personally transferred from LSP for the same reason.He is believed to be the coconspirator of the conspiracy to have Woodberry violently attacked at Angola. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

48. Defendant (FNU) Kleinpeter is a Lieutenant Colonel in the Internal Affairs Division of the Louisiana Department of Public Safety and Corrections tasked with investigation of complaints against employees, especially ranking officials. He took retaliatory actions in falsifying reports, ordering a shakedown of Woodberry and furthered the enforcement of the Woodberry exclusionary rule. He enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA due to Plaintiff's communication with the public and press WBRZ. He was very instrumental in the retaliatory transfer. He is sued in his official

capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

49. Defendant Kolby Johnson is an administrator of the Vocational Studies and educational department at Elayn Hunt Correctional Center. He took retaliatory actions in furtherance of the enforcement of the Woodberry exclusionary rule prohibiting Woodberry from initially enrolling due to his knowledge of the Woodberry rule, and enforced the retaliatory transfer of Plaintiff to LSP-ANGOLA after Plaintiff filed multiple complaints with the NCCER Headquarters and State Education Officials. He also received federal funding or grant monies for Woodbery's enrollment in the HVACR and transition program but transferred plaintiff or allowed the transfer knowing he received the funding. He was very instrumental in the retaliatory transfer. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

50. The Department of Public Safety and Corrections (DPSC) is the administrative arm of the State of Louisiana responsible for administering the State's Correctional facilities, including EHCC (Hunt) and (LSP) Angola where Plaintiff is incarcerated. The DPSC also received federal funding or grant mónies for Woodbery's enrollment in the HVACR and transition program but transferred plaintiff or allowed the transfer knowing he received the funding. The Department created, oversaw and enforced the Woodberry exclusionary rule, The DPSC is responsible for each of the actions and inactions complained of herein. The DPSC is sued as an entity pursuant to the ADA and section 504 of the Rehabilitative Act, and RLUIPA. As well as Monnell and all other civil rights violations cited herein. The DPSC is Headquartered in and resides in the Middle District of Louisiana.

## FACTUAL ALLEGATIONS

51. December 1, 2022, Plaintiff filed a federal civil action complaint for damages against Walter Jarrell, Jason Russ, Brandy Landry, Donald

Johnson, Jason Linzy and several others. (USMDLA NO. 22-cv-BAJ-RLB) alleging retaliation and cruel and unusual punishment.

52. February 5, 2024, Walter Jarrell and several others were dismissed as defendants by U.S. Magistrate Judge Ralph Bourgeois. a drastic mistake.

53. On March 25, 2024, a critical security breach occur export ended Allen Dabney #297771, left Unit 2 armed with a weapon, entered Unit 1 without proper search or authorization. Dabney approached Woodberry demanding he call Ledbetter, then pulled a homemade shank on Ledbetter, threatening him to disassociate with Woodberry. Email evidence sent to Walter Jarrell the same morning warning of potential danger from Dabney. Jarrell failed to take preventative action despite advance warning.

54. On March 25-April 22, 2024, Incident reported to former Assistant Warden Walter Jarrell-no disciplinary action taken against Dabney.

55. April 11, 2024, retaliation escalates. Ledbetter moved to Fox 4C tier, same tier as Dabney by Jarrell/Russ despite known threats.

56. April 22, 2024, attorney Donna Grodner sent a preservation letter requesting video surveillance footage of March 25-26 incidents.

57. Reactive Response- April 25-26, 2024, after receiving the Grodner letter. Bordelon/Jarrell ordered Dabney searched for a knife and found nothing.

58. April 29, 2024, Woodberry filed ARP EHCC-2024-251 regarding the Dabney incident.

59. April 29, 2024, immediate retaliation- upon receipt of ARP Woodberry placed in involuntary security protection per orders of Bordelon, Russ, Jarrell, Carl Thomas.

60. At the protection hearing Gaines/Polozoa told the plaintiff because you filed this ARP you are locked up.

61. May 3, 2024, Woodberry wrote to Jason Russ noting nothing was done until Grodner's letter.

62. May 6, 2024, protection board hearing- Ledbetter and Dabney transferred to other institutions, Woodberry documented as enemy in Ledbetter's enemy records but not vice versa. Woodberry moved to

Unit 2 in Dabney/Ledbetter old quarters with documented or should have been documented enemies in close proximity. It is now apparent the move was intended to cause Woodberry to be attacked, authorized by Jarrell or Russ.

63. High level Security Intervention- On May 8, 2024, Woodberry met with former DPSC Secretary James Leblanc about the actions of Russ, Jarrell, and Bordelon. He explained he was intentionally moved to the same unit with documented enemies. Leblanc became livid upon learning of the email warnings to Jarrell and his failure to prevent. He ordered defendant Bordelon to correct the situation.

64. May 10, 2024, Woodberry moved back to Unit 1.

65. May 13, 2024, both Russ and Jarrell were demoted.

66. May 29, 2024, Lucas - a should have been documented enemy of Woodberry transferred to DWCC. The next week Walton transferred to LSP.

67. June 14-19, 2024, Ledbetter filed an ARP against Rayburn Correctional Center for transfer and sent emails to Secretary Leblanc.

68. Bordelon makes a deal with Woodberry to return Ledbetter. Emails confirm the agreement

69. On July 1, 2024, Ledbetter returned to Hunt. Willie Verrett documents him as Woodberry's enemy. Houses him on Fox 3 A.

70. Three weeks later, Ledbetter moved back to Golf 1 A tier, the same dorm as Woodberry.

71. WBRZ reports of corruption intensifies.

72. A week later Jarrell moved to Unit 1 as interim Warden in Carl Thomas' absence.

73. The shakedown campaign- On August 16, 2024, Ledbetter and Woodberry searched per orders of Landry, Russ, Jarrell, by Lt. Lola Hinyard and Master Sergeant Colar nothing found.

74. August 29, 2024, 4:30-6:30 a.m. massive search of Golf 1. Jarrell personally enters Golf 1, Woodberry's legal documents ramshackled. Ledbetter was charged with contraband.

75. Approximately 12:45 p.m. Major Randell Rescue escorts Letter to investigative segregation, orders Woodberry to report to Jarrell. In

Jarrell's office he said "when are you gonna stop filing on us? " Don't worry, Ledbetter not coming back.

76. Ledbetter's report was deferred to Unit 1, Jarrell for investigation/camera review. Jarrell refused to conduct investigation orders and returned to D.B.

77. Warren Dugas approached Woodberry and said "Jarrell is ordering me to search you, he thinks you have drugs because he locked Ledbetter up, maybe you should stop and leave these people alone. Dugas said to Woodberry.

78. Jason Russ personally observed the surveillance camera footage as Warren Dugas stripped searched Woodberry.Dugas confirmed he received Russ' call and radioed for assistance to Major Rescue.

79. Attorney intervention triggers escalation -on September 20, 2024, via protected activity attorney Kellen Mathews requests video preservation of shakedown from August 29, 2024.

80. On Monday September 23, 2024, Xavier Ledbetter added to the court docket per orders of Bordelon to be released. Landry, Jarrell, Gaines upset.

81. Ledbetter returned to quarters on September 24, 2024.

82. Warden Bordelon to Woodberry "you know what the video shows" confronting Woodberry about the attorney email/letter. Hours later Bordelon was suspended from his position. Woodberry and Ledbetter were placed in handcuffs, per orders of Jason Linzy and Brandy Landry for rule 21C. Jarrell triumphantly shouted as the two passed " I told you he wasn't coming back. You ain't listen!"

83. Inhumane conditions -torture. Woodberry was placed in an observation tank that was covered with human feces from the previous inmate Delis Pierre. Cell contaminated with chemical agent residue, non functional water, leaking toilet, and lacked toilet paper or bedding. Let. Russell documented the conditions at 7:41 p.m. in D1 cellblock logbook 9/26/2024 and notified superiors. Woodberry developed a severe rash and required medical treatment.

84. On September 27, 2024, emails from family sent to defendant Gary Westcott about retaliation and Woodberry being involved with

Bordelon's suspension. Seth Smith replied, assuring he would investigate.

85. Plaintiff filed ARP with Warden against Russ, Landry, Jarrell, Linzy, Defendant Denyshia Williams refused to accept or process the retaliation complaint against her superiors.
86. Plaintiff again sent emails and family sent emails to Seth Smith and Gary Westcott relative to safety, ARPS not processed or accepted, and retaliation.
87. On October 8, 2024, defendant Jarrell personally visited Woodberry in D1 cellblock per Seth Smith orders, but Jarrell used this as a precursor making explicit threats "drop the damn request for a copy of the video or you're going to end up in lockdown" and " you'll have worse problems to worry about than this write up."
88. October 9, 2024, defendant Landry held legal mail for 40 days from attorney Adams and Reese in civil action 22-cv-00979-BAJ-RLB. Then she offered a quid pro quo, drop the lawsuit, and video request and I'll drop the rule 21C and let you out."
89. October 14, 2024, Internal Affairs investigator defendant Keinpeter, and Luke Rheams interview Woodberry about Bordelon, emails on retaliation BUT met primarily with defendant Landry first. The investigation was compromised and controlled or directed by Luke Rheams' orders to substantiate the false 21C charges against Woodberry.
90. October 15- November 26, 2024, a series of emails and text messages were exchanged between Johns, Russ', and Coody regarding ongoing housing situation and the refusal to release Woodberry from lockdown.
91. On October 18, 2025, Woodberry moved to Beaver 4 D tier per Russ' orders, "as if" he was sanctioned. Beaver 4 D tier was designated punitive/disciplinary segregation.
92. On October 21-22, 2024, Donald Johnson came to the plaintiff's cell and confirmed Woodberry should not be on D tier having never gone to D.B. Court and blamed Russ' for improper placement and said he would send emails to keep track of it.

93. On October 23, 2024, Woodberry attended D.B. Court Stephanie Gaines read the original version of Landry's false report into the D.B. Court audio. Denied Plaintiff's motions and sanctioned him to 30 days disciplinary segregation without receipt of the rulebook.

94. Russ' attempted bribery promising to sign off on the cellblock review board if the plaintiff dropped the lawsuit and stopped filing ARPS. Family members continued to send emails to DPSC Westcott and Smith.

95. October 31, 2024, cellblock review board recommended release to general population but Woodberry and Ledbetter were kept in segregation by Verrett, Gaines per orders of Landry, Russ, Rheams and Bickham while several others who were granted review boards days after Woodberry but released in advance due to his refusal to withdraw ARPS and dismiss lawsuit.

96. November 14, 2024, Lt. Colonel Bowman called Major Willie Verrett asking why wasn't Ledbetter and Woodberry moved. Verrett replied to tell Ledbetter to get comfortable, I'm not releasing them and hung up the phone.

97. November 15, 2024, Rheams, Coody, Russ and Johnson made rounds. Woodberry asked about his release to population Rheams replied "it's probably rescinded", Coody chimed in and said listen you and Ledbetter are a hot topic, y'all are caught up in this thing with Bordelon. Moments later Russ and Johnson were exiting the tier and Johnson said " Man, they are trying to ship (transfer) you and Ledbetter"

98. On December 4, 2024, Institutional Policy creation -Tim Hooper and Chad Darbonne meet with Jarrell in his office. Results in creation of institutional policy. The "Woodberry rule". Blanket new unwritten exclusionary rule or practice to satisfy Jarrell who vehemently expressed his desire to keep the two (Ledbetter and Woodberry) separated.

99. December 4, 2024, Hooper and Darbonne called Woodberry to the investigative services office. Hooper spoke candidly to the plaintiff. " I'm back, tell your people to stop going to Headquarters. How much tim do you have? Do you want to spend the rest of your life in a cell at

Angola? Well chill out, I'm not sending you back to Unit 1 with Jarrell, everybody here at Hunt hates you they say you are filing on all of them.

100. On December 5, 2024, Woodberry released to Unit 2, Ledbetter returned to Unit 1 but was placed in a lockdown dorm to keep him separated from Woodberry per Hooper, Darbonne, and Jarrell.

101. Jarrell ordered Captain Bryan Dottolo to bring Ledbetter to his office. Jarrell asked Ledbetter, you came back, did anybody else come with you? Ledbetter replied, yes another inmate, Jarrell chuckled "Nah, you know did anybody else come with you?" And laughed excessively

102. Jarrell issued orders to not allow Ledbetter to ever exit Fox 1 C dormitory except for callouts that are mandatory.

103. Woodberry discovers several personal items and legal materials missing from his property. Informs Darbonne on or about December 8, 2024 Darbonne instructs him to send all documents to his office.

104. December 16, 2024, Hooper threatens Angola transfer upon seeing Woodberry. Woodberry explains he has several enemies and safety concerns at Angola. Hooper replies "stop complaining, I let you out and you're filing shit already. I saw your appeal, you were done wrong, the paperwork wasn't done right.

105. On December 18, 2024 Hooper granted Woodberry D.B. Appeal EHCC-2024-180

106. Ledbetter shows Hooper his appeal erroneously rejected as untimely. Yet, docketed before Woodberry's.

107. On December 26, 2024, Warren Dugas called Woodberry to drop ARP EHCC-2024-623. Woodberry refused.

108. Woodberry attempts to enroll in HVACR School but informed by Dr. Kolby Johnson he would have to check into it because of the keep separated from Ledbetter under (The Woodberry rule) Plaintiffs nephew emailed Dr. Henry Sanders of DPSC Headquarters.

109. January 21, 2025, Warren Dugas escorted Woodberry in 14° weather temps while the prison was on lockdown, to speak to Craig White on the phone requesting the plaintiff withdraw the ARP EHCC-2024-623 against Dugas. Plaintiff had been requesting plaintiff a

written response to the ARP from Defendant Denyshia Williams who allowed it to be held 70 plus days in abeyance without a response. Solely to assist Dugas, Russ, Jarrell, and Landry to force Woodberry to withdraw the ARP. Craig White promised to move Woodberry back to Unit 1 if he withdrew the ARP.

110. Several days later White came to Unit 2 and advised Woodberry "I can't move you to Unit 1, Hooper got this thing with Jarrell to keep you and Ledbetter separate. But I'm moving you to Fox 6 Vets dorm right now. I just sent an email. Be cool. I gotta figure out this separation issue with you and Ledbetter. Y'all are not listed as enemies. Well y'all were but its been cleared. That was Jarrell's issue with Hooper but I'm over Unit 1 now.

111. February 24, 2025 Darbonne offered to allow Woodberry to order a clothing package if he withdrew his lost property complaint. Woodberry refused. EHCC-LPC-2024-190

112. March 6, 2025, Hooper again threatened to transfer Woodberry to LSP ANGOLA to live in a cell.

113. Several family members emailed Secretary Westcott and Seth Smith from March 8 to March 10, 2025, about Hooper's threat and ongoing retaliation.

114. March 10, 2025, Hooper claimed his transfer threats were just entertainment. "You and Ledbetter are my entertainment."

115. March 18, 2025 Woodberry was interviewed by Captain Braun and Major K. Williams concerning emails to Headquarters about Woodberry rule, ongoing retaliation, threats to transfer despite safety concerns.

116. March 26, 2025, Seth Smith replied to the family's email correspondence with an unsigned Summary Report attached written by Kimberly Williams and Captain Braun attempting to discredit plaintiff. The report acknowledged the "Woodberry rule" by stating ***"Due to the nature of their relationship inmates Woodberry and Ledbetter are housed separately".*** Ledbetter filed an ARP complaint about the exclusionary rule, emphasizing the disciplinary appeal exonerated them from Landry's false report. And other inmates convicted of aggravated sex offenses namely Stephen Wyatt

and Kenneth McNeal are housed in the same dorm and work together. Denyshia Williams again refused to process this ARP.

117. May 22, 2025, WBRZ reports leak of internal UOR documents and excessive force, use of drugs at Hunt.

118. May 26, 2025, Donald Johnson placed on suspension related to the leak. Darbonne, Russ and Turner accused Woodberry of leaking the documents or being involved with the leak.

119. Monday June 2, 2025, Ledbetter moved to program in Fox 6 with Woodberry per Russ. But moved out of dorm two 2 days later led Russ, Jarrell, Coody and Darbonne to further enforce the Woodberry rule.

120. June 3, 2025, Jarrell temporarily assigned to Unit 3. Woodberry was interviewed by Internal Affairs Major Gavin Travis about the leak of internal documents to the media, again threatened with transfer when Keithe Turner arrived.

121. June 4, 2025, conspiracy to remove documented enemies from Plaintiff's enemy records began. *Despite the Summary Report report provided by Seth Smith on March 26, 2025, which clearly stated Woodberry had 63 documented enemies 5 at HUNT 4 four of which were removed. This proves that the list was altered prior to his transfer to LSP.* Defendants Buttross, Jarrell, Smith, Russ, Landry, Gaines, Verret, White, Turner, Coody and Rheams all involved to expedite and effectuate transfer to LSP.

122. June 5, 2025, Woodberry and Ledbetter spoke to Coody concerning Ledbetter's move to Golf 1, his ARP concerning the Woodberry rule and how other inmates Stephen Wyatt, Kenneth McNeal, Nickey Landor and Calvin Rousell are not subjected to the same exclusionary rule. Coody replied "this is not about them but a personal bias against you!" I received a call at my house at 5 o'clock p.m. and ordered to make sure Ledbetter was moved away from you" When asked by who. Coody replied "it's not who its they "

123. Woodberry informed by Coody that Ledbetter was being transferred to RLCC this coming Monday. This conversation occurred at approximately 1:00 p.m. in Coody's office on Friday June 13, 2025. Coody stated they are going to physically make sure y'all are

separated. Ledbetter's friend Alicia Pellegrin sent an email to Defendant Keithe Turner.

124. June 13, 2025, Craig White came to Unit 2 searching for Ledbetter. White was visibly upset. He began interrogating Ledbetter in Coody's office, then brought him to his office. White informed Ledbetter that Turner is upset about him knowing of the transfer coming Monday, White blamed Woodberry for knowing and said Woodberry is involved in everything. This leak thing is big. Turner thinks he has something to do with the leak. Y'all know something and not saying it. White threatened don't be surprised if both of y'all get shipped (transferred).

125. On June 16, 2025, during Woodberry's transfer he encountered Mental Health worker Grace Wilburn who told him "I documented everything you told me. Are they transferring you? I am so sorry. " Woodberry was awaiting the body scanner when he saw Defendant Buttross, Woodberry asked him why he was transferred to Angola with so many enemies there. Buttross replied I know, write me a letter. Minutes later Warden Turner passed and smiled at the plaintiff. When Woodberry asked Turner why he was being transferred knowing he has enemies there. Turner replied "You leaked them UORS huh, White called me Friday and said you sent an email for Ledbetter.......you will see I do my own thing I don't play".

126. Nelson Tippen #36772, a witness in this proceeding and Woodberry's pending civil action 22-cv-00979-BAJ-RLB, as well as Xavier Ledbetter #725591, both transferred to other institutions to prevent and discourage them as witnesses to further the Woodberry rule.

127. Upon arrival at LSP ANGOLA, on June 16, 2025, Woodberry was informed that several documented enemies who were once in his enemy protection record have been removed without Woodberry's knowledge and consent. Woodberry clearly documented all the enemies names he could recall that were once in his enemy records.

128. The same day, upon being transferred to Camp D, Woodberry encountered a known enemy, who approached him in the REBTC

bullpen and threatened him in the presence of Master Sergeant "Big O" and Master Sergeant Mcquirter at the REBTC Bullpen.

129. Woodberry filed an emergency mARP about safety and retaliation with LSP officials. His family sent several emails to Secretary Westcott, Chief Seth Smith and Darrel Vannoy concerning the matter.

130. WBRZ news reporter Bess Casserleigh sent a series of reports and email's to DPSC Communications Tiffany Dickerson inquiring about the transfers of Woodberry and Ledbetter.

131. On June 26, 2025 Bess Casserleigh airs story about retaliation against Woodberry and safety concerns upon receipt of two different versions of enemy list with discrepancies. According to the report, US Magistrate Ralph Bourgeois called the timing of the transfer suspicious and the LSP would investigate the manipulation of the enemy list.

132. The same day, Donnie Bordelon, Shannon Demars, and approximately 15 shakedown officers shook down Woodberry cell for a cellphone asking how he was communicating with the media from his cell? Nothing found. However, all of Woodberry's personal effects and legal work was confiscated per Demars and Bordelon. Woodberry placed under strict observation.

133. The Attorney General's Office, through counsel, provided a redacted enemy list of approximately 25 named enemies without Kendall Davis and several others. Woodberry provided a copy of Hunt's version dated 2022 and 2024 with Davis and several others. This conflicts with *the Summary Report report provided by Seth Smith on March 26, 2025, which clearly stated Woodberry had 63 documented enemies 5 at HUNT 4 four of which were removed. This proves that the list was altered prior to his transfer to LSP.*

134. The Attorney General office through counsel advised the court that LSP-State Police will investigate the alteration and manipulation of the enemy list as reported by WBRZ Bess Casserleigh.

135. Plaintiff received an appalling ARP response from LSP ANGOLA. It was allegedly granted but not all of the relief Woodberry desired was provided. Specifically, the response failed to name who (official)

and why were the enemies removed and ignored the enemies removed from Hunt.

136. Defendant Denyshia Williams waited until Plaintiff was transferred to LSP to accept and process EHCC-2025-150. A custom and practice used to deny the plaintiff's right to access the courts and freedom to petition for redress.

137. Plaintiff was intentionally transferred to LSP ANGOLA with known documented enemies to further the threats, and civil rights violations of defendants, who intend to keep plaintiff in maximum custody solitary confinement indefinitely as he has NO opportunity for reduction in custody for the foreseeable future due to enemy and safety concerns. An issue or circumstance that did not exist at Hunt Correctional Center

138. On July 22, 2025, Woodberry was informed by Colonel Marcus Jones that he received a call from Defendant Demars and was ordered to itemize all of Plaintiffs personal effects and have them mailed home.

139. On July 22, 2025, Xavier Ledbetter transferred to Rapides Detention Center III.

140. Plaintiff Woodberry has been advised that Defendants Smith and Westcott have order Woodberry not be housed at Elayn Hunt Correctional Center as long as they are in an administrative position of authority. This will prevent Woodberry from reporting further corruption and violations at Hunt to the media and judicial system.

141. Defendants took the aforementioned actions in retaliation against Woodberry for his exercise of free speech, petitioning the government for redress through filing lawsuits and grievances, communicating with the press and public and did so in furtherance of the Woodberry rule in violation of his rights. The use of solitary confinement and maximum security classification for communication with the press and public exceeds the punishment sanctioned for other more serious rule violations.

142. This retaliation and denial of due process, retaliatory transfer, creation of a discriminatory rule, and intentional infliction of emotional distress has caused substantial harm to Plaintiff Woodberry. In

Addition to the physical and mental anguish to his person, Plaintiff Woodberry has suffered deprivations, including:

1. He sustained a change in his classification from medium to maximum security, and loss his enrollment in HVACR and all attendant rights and privileges;
2. He lost his employment at Hunt, and ability to earn wages in the hobby shop; and his tools, materials, personal effects and legal material.
3. He was subjected to prolonged housing in restrictive confinement including solitary confinement at Hunt and LSP ANGOLA, and attendant loss of rights and privileges;
4. He remains subjected to geographical transfer away from his friends, family and support network;
5. He was intentionally transferred into a dangerous situation that the defendants knew or should have known existed before, during and after they manipulated his enemy list;
6. He lost hundreds of dollars of personal property allowed at Hunt but disallowed at LSP ANGOLA, forcefully confiscated by LSP ANGOLA.
7. He lost approximately $3,000 in hobby raft tools and materials, an an undetermined amount of legal material which EHCC officials refused to allow Plaintiff to inventory or pack;
8. He has been a tremendous financial burden on friends and family;
9. He has lost countless nights of sleep, lives in constant fear of his safety and being attacked at LSP ANGOLA. Plaintiff had to be prescribed medication for anxiety and sleep disorders as a result of the defendants proximate actions.

138. The Defendants are on notice that retaliation for exercise of the First Amendment right is unconstitutional.

## CLAIMS FOR RELIEF

### First Claim

**First Amendment Retaliation Petition and Access to Courts.**
Defendants violated Plaintiff's First Amendment right by retaliating against him for filing grievances and lawsuits. After Plaintiff filed civil action USMDLA NO. 22-cv-BAJ-RLB, and several grievances as well as request to preserve video surveillance camera footage. This retaliatory conduct was undertaken under color of state law and proximately caused Plaintiff to suffer damages.

### Second Claim

**Free Speech Press Communication**

Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to free speech and communication with the press and public by retaliating against him for speaking out about prison conditions and communicating with the press. Defendants systematic campaign of retaliation, include the creation of the discriminatory "Woodberry rule" and escalating punishments, was undertaken to chill Plaintiff's protected speech and communications, all under color of State law proximately causing Plaintiff to suffer damages.

### Third Claim

**Fourteenth Amendment Due Process**

Defendants violated Plaintiff's Fourteenth Amendment procedural due process rights by systematically filing false disciplinary reports with fabricated evidence, denying copy of rulebooks, manipulating procedures to deny motions, and detaining Plaintiff for 73 seventy three days based on a compromised investigation, even after release to general population was recommended by the cellblock review board. Defendants also violated Plaintiff's substantive due process rights through conduct that shocks the conscience, including the creation of discriminatory policies and systemic evidence fabrication.

## Fourth Claim
## Conspiracy to violate Civil Rights 42 U.S.C. § 1985(3)

Defendants conspired to deprive Plaintiff of equal protection of the laws by agreeing to systematically retaliate against him for exercising his legal rights. The conspiracy included creating the discriminatory "Woodberry rule" , conducting fabricated investigations, filing false reports, and coordinating punishment based on class based Animus. Defendants committed overt acts in furtherance of this conspiracy causing Plaintiff to suffer damages.

## Fifth Claim
## 42 U.S.C. § 1983, -Monnell

Defendants all named herein, Elayn Hunt Correctional Center, employees, assigns, and agents, and State of Louisiana, through Louisiana Department of Public Safety and Corrections are liable under Monnell for maintaining an unofficial custom and practice known as the "Woodberry rule", which was created specifically to discriminate against Plaintiff. This custom was adopted/created as a practice with deliberate indifference by final policy makers who had knowledge of the continued violations and failed to take corrective action,making the custom the moving force behind Plaintiff's constitutional violation injuries.

## Sixth Claim
## Failure to Prevent Conspiracy

Defendants in supervisory positions Gary Westcott, Seth Smith, Edward Bickham, Tim Hooper, Chad Darbonne, Keithe Turner, Luke Rheams, Jason Russ, and other high level officials had knowledge of the conspiracy described in claim Four but neglected and refused to aid and assist in preventing or aiding in the prevention of the commission of the conspiracy having power to prevent or aid in preventing the commission thereof. Defendants know of the Woodberry rule and systemic violations, these Defendants failed to take adequate remedial action, causing Plaintiff to suffer damages.

## Seventh Claim

## Deliberate Indifference-Cruel and Unusual punishment

Defendants Warren Dugas, Walter Jarrell, Jason Russ, Brandry Landry, Jason Linzy and Joe Buttross subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment by placing him in a cell covered with human feces, chemical agent residue, with no working water or basic necessities. This conduct was objectively serious, caused Plaintiff severe skin reactions requiring medical treatment and demonstrated Defendants' deliberate Indifference to Plaintiff's serious medical needs and the right to be free from torture and cruel and unusual punishment, all undertaken under color of state law.

## Eighth Claim

## Defendants violate 42 U.S.C. § 1983, 18 U.S.C. § 241

Defendants engaged in a conspiracy against rights by agreeing to injure, oppress, threaten and intimidate Plaintiff in the free exercise and enjoyment of his constitutional rights. The conspiracy involved multiple defendants across departments who coordinated to create the Woodberry rule, fabricate evidence, file false reports, retaliatorily transfer Plaintiff and systematically deprive Plaintiff of First, Eight, Fourteenth Amendment rights through overt acts undertaken under color of State law.

## NINTH CLAIM

## Obstruction of Justice 42 U.S.C. § 1983, 18 U.S.C. §§ 1503, 1512

Defendants obstructed justice by knowingly filing false reports, creating fabricated evidence and engaging in systemic cover up activities designed to interfere with federal civil rights, investigations and proceedings. Specifically, Defendants Brandry Landry, Kimberly Williams, Braun, Hooper, Darbonne and Kleinpeter filed false reports or directed the filing of false investigation and Summary reports after the March 18, 2025, interview and defendant Hooper directed staff to "shut Headquarters up" to obstruct legitimate oversight, all undertaken under color state law.

## Tenth Claim
## RLUIPA VIOLATIONS 42 U.S.C. § 2000cc-1

Defendants violated the Religious Land Use of Institutionalized Persons Act RLUIPA by imposing substantial burdens on Plaintiffs' religious exercise through the discriminatory Woodberry rule as Plaintiff was denied to participate in any Unit 1 Rastafarian Study callouts on Saturdays due to Ledbetter being housed on Unit 1 where the callouts were held. In furtherance of the Woodberry rule- Monnell violation. He was also denied all access to his religious materials while in lockdown for 73 days and some items were held in the mail for approximately months per orders of Defendant Russ. These restrictions were not in furtherance of a compelling government interest and we're not the least restrictive means of furthering such interest.

## Eleventh Claim
### Violation of the Americans with Disabilities Act and Rehabilitative Act

Plaintiff has disabilities due to mental illness, which interferes with his major life activities. Defendants have knowingly and consistently discriminated against plaintiff because of his disability and maintaining an unofficial custom and practice known as the "Woodberry rule", which was created specifically to discriminate against Plaintiff. Placing plaintiff in a known dangerous and unsafe facility LSP ANGOLA and placing Plaintiff in extended lockdown/preventative segregation or CCR defendants have denied Mr. Woodberry the benefits of the facilities services, programs and activities, including education, programming, recreation, exercise, and mental health treatment and services, thus discriminating against Woodberry on the bases of his disability.

### Violation of Section 504 of the Rehabilitative Act of 1973

Plaintiff has disabilities due to mental illness, which interferes with his major life activities. Defendants have knowingly and consistently

discriminated against plaintiff solely on the basis of his disability and maintaining an unofficial custom and practice known as the "Woodberry rule", which was created specifically to discriminate against Plaintiff in violation of Section 504. Placing plaintiff in a known dangerous and unsafe facility LSP ANGOLA and placing Plaintiff in extended lockdown/preventative segregation or CCR defendants have denied Mr. Woodberry the benefits of the facilities services, programs and activities, including education, programming, recreation, exercise, and mental health treatment and services, thus discriminating against Woodberry on the bases of his disability.

**State Law Claims**

**Intentional Infliction of Emotional Distress**

Defendants engaged in extreme and outrageous conduct that was intended to cause, and did cause, severe emotional distress to Plaintiff. This conduct included systematic retaliation, creation of discriminatory policies, detention on false charges for 73 days, placement in contaminated living conditions, destruction and confiscation of all his property, and institutional cover-up efforts that exceeded all bounds of decency tolerated in civilized society.

**Civil Conspiracy- State Law**

Defendants agreed among themselves to accomplish an unlawful purpose through unlawful means, specifically to falsify records, obstruct investigations, and systemically violate Plaintiff rights. Defendants committed overt acts in furtherance of this conspiracy, including filing false reports and covering up constitutional violations, causing damages to Plaintiff.

**Violation of Louisiana Civil Rights Act**

Defendants interfered with Plaintiff's civil rights by systemically discriminating against him based on his exercise of legal rights to file grievances and lawsuits. This interference was intentional and caused Plaintiff to suffer damages including loss of liberty, property,

emotional distress, and deprivation of constitutional protections under Louisiana Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff-Petitioner respectfully prays that this Honorable Court grant the following relief:

1. Declare the the acts and omissions of the Defendants violate Plaintiffs Constitutional rights and federal law;
2. Enter an injunction requiring the Defendants, their agents, subordinates, employees and all others acting in concert with them to cease their unconstitutional and unlawful practices and to remedy their violations of the Constitution and the laws;
3. Enter an injunction requiring the Defendants to rest to Plaintiff all rights and privileges he enjoyed prior to the retaliation and all other violations;
4. Award to Plaintiff nominal, compensatory, and punitive damages
5. Retention of jurisdiction over Defendants until such time that the Court is satisfied th defendants' unlawful policies, practices, acts and omissions no longer exist and will not occur;
6. Reasonable attorney's fees and cost pursuant to 42 U.S.C. § 1988,
7. Such further relief as the Court may deem just and proper.
8. Judicial interest; and judicial interest on attorney's fees.

Respectfully submitted,

Derrick Woodberry

DERRICK WOODBERRY
355771 LSP
LOUISIANA STATE PENITENTIARY
ANGOLA, LA 70712

## CERTIFICATE OF SERVICE

I Derrick Woodberry hereby certify that a true and correct copy of the foregoing was served upon all parties of record by U.S. Mail on 26th day of September 2025.

Derrick Woodberry

Derrick Woodberry

## VERIFICATION

I, Derrick Woodberry, declare under penalty of perjury 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on September 26, 2025.

Derrick Woodberry

Derrick Woodberry